## Victor v. Commonwealth.

(Decided October 14, 1927.)

## Appeal from Greenup Circuit Court.

1. Criminal Law.—In rape prosecution, where prosecutrix had testified that, in tightly holding her for accused, her husband produced bruises on her arms and shoulders which she exhibited to grand jury, permitting grand jurors to testify regarding what witness stated before grand jury regarding bruises held error, though witness could testify regarding appearance of bruises.

2. Witnesses.—Husband of prosecutrix, in rape prosecution, was not disqualified to testify for accused, under provision of Civil Code of Practice, section 606, subd. 1, providing that offered spouse is disqualified to testify for or against the other, except in certain cases, since prosecutrix was not party to prosecution, but only a witness.

3. Witnesses.—Under Civil Code of Practice, section 606, subd. 1, husband of prosecutrix, in rape prosecution, who prosecutrix claimed held her for accused, could testify for accused as to what happened on occasion in question, since information was not obtained by virtue of marriage relation, but was obtained in same manner that any other bystander could have obtained it.

COLDIRON & HARRIS for appellant.

F. E. DAUGHERTY, Attorney General, and G. D. LITSEY, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

An indictment returned by the grand jury of Greenup county accused the appellant, Dewey Victor, of the crime of rape committed upon the body of Lizzie England Carr, a female about 24 years of age. The husband of the prosecutrix, Butler Carr, was accused in the same indictment of aiding and abetting Victor in the commission of the crime. The latter on his separate trial was convicted and punished by confinement in the penitentiary for a period of 10 years. His motion for a new trial was overruled and he prosecutes this appeal. A number of supposed errors are relied on in the motion for a new trial, but we do not regard any of them as material except (1), the admission of incompetent evidence offered by the commonwealth and (2), the exclusion of competent evidence offered by defendant.

A brief synopsis of the substantial facts as testified to by the alleged victim were: That she and Butler Carr

were separated at the time and not living together. She was on a visit to her sister, and, while there, went walking with her husband, which was between 7 and 8 o'clock one evening; that they went to one side of the pike a short distance therefrom and sat down and engaged in general conversation and later engaged in the act of sexual intercourse, when defendant, Victor, approaching through a patch of weeds caught them in the act. The three then talked for a while and later her husabnd held her while Victor committed the crime with which he is accused. They continued to remain there and at about 11 o'clock and while, as she claimed she was crying, her brother and two others appeared upon the scene, when the two defendants in the indictment hurriedly ran away. It does not appear that she made any complaint or outcry, but she went before the grand jury, which was in session, on the next day and procured the indictment. According to her testimony, the parties were at the place where the alleged crime was committed some four hours, and two of the witnesses who finally appeared corroborated her statement as to her crying, but one of them contradicted her and supported the defendant when he said that they were quietly sitting with the prosecuting witness between him and her husband and all of them in the best of humor. Defendant in his testimony admitted the intercourse with the witness on the night in question and said that he did the same thing the night before and both of them were with her consent, although she testified that she had never seen him until he appeared on the scene just before the crime was committed. The parties are evidently members of a low strata of society and the story told by the prosecuting witness is extremely incredible, although, if literally believed as she painted it, the jury was authorized to convict the defendant. With the statement of this much of the substance of the testimony, we will now proceed to consider and determine the two grounds above mentioned.

1. The prosecuting witness testified that in tightly holding her, and because of her scuffling, her husband produced bruises on her arms and shoulders which she exhibited to the grand jury on the next day. Two of its members were permitted to testify as to what the witness stated before the grand jury with reference to the bruises and which we hold was manifestly incompetent.

The witnesses were competent, however, to testify as to the size, character, and appearance of the bruises, but not as to what the prosecuting witness said as to what produced them, or when or how they were made. The prosecuting witness on the trial could then state who produced them and when, together with the further fact that the bruises exhibited to the grand jury were the same ones made by her assailants at the time, but clearly, we repeat, what she stated to the grand jury concerning them can be classed only as hearsay.

2. Defendant offered as a witness in his behalf the husband of the prosecuting witness to prove by him what happened on the occasion in question, but the court declined to permit him to testify, and his testimony as contained in defendant's avowal corroborated in every particular defendant's account of the transaction and showed that the acts and conduct of the defendant upon which the prosecution was founded were all done with the consent of the prosecuting witness.

It is not stated anywhere in the record the grounds upon which the court excluded the testimony of the offered witness, but we assume that the court was of the opinion that the witness was incompetent under the provisions of subsection 1 of section 606 of our Civil Code. The applicable part of that subsection says:

"Neither a husband nor his wife shall testify while the marriage exists or afterwards concerning any communication between them during marriage. Nor shall either of them testify against the other. Nor shall either of them testify for the other, except," etc.

The exceptions have no relevancy to this case. By the inserted language it will be observed that the offered spouse is disqualified (a) to testify either during the marriage or afterwards "concerning any communication betwen them" occurring while the marriage relation existed, and (b) the offered spouse is disqualified to testify for or against the other, except in certain enumerated cases permitting the one to testify for the other.

We will consider those subdivisions in reverse order. It is manifest that the husband in this instance was not disqualified because of subdivision (b), since the prosecuting witness in this case was not a party to the prose-

cution, but only a witness, the parties being the defendant, Victor, and the commonwealth. Therefore it cannot be assumed that the court rejected the offered testimony under that subdivision.

The disqualification of either spouse as a witness under subdivision (a), supra, has been before this court in a number of cases, and it uniformly has been held:

> "That the word 'communication' in this section should not be confined to statements between husband and wife, but should be construed to embrace all knowledge upon the part of one or the other obtained by reason of the marriage relation, and which but for the confidence growing out of it would not have been known to the party." Willey v. Howell, 168 Ky. 466, 182 S. W. 619.

The same definition was adopted and approved in the cases of Commonwealth v. Sapp, 90 Ky. 580, 14 S. W. 834, 29 Am. St. Rep. 405; Hostetter v. Green, 159 Ky. 611, 167 S. W. 919, L. R. A. 1915C, 870; McLain v. Commonwealth, 171 Ky. 373, 188 S. W. 377; and Allcock v. Allcock, 174 Ky. 665, 192 S. W. 853. Other domestic cases to the same effect could also be cited.

It is also a thoroughly established rule, and which prevails in this jurisdiction, that, notwithstanding the provision contained in subdivision (a), supra, the disqualification therein contained does not apply so as to defeat the competency of the offered spouse in a prosecution of the other one for a crime committed against the person of the former, or against his or her property. Some of the cases so holding are the Sapp case, supra, and Commonwealth v. Allen, 191 Ky. 624, 231 S. W. 41; there being others to the same effect. In such cases the injured spouse is a competent witness in prosecutions against the other involving crimes against the person or property of the offered one. The prosecutrix in this case was, therefore, a competent witness to testify upon the trial of her husband as an aider and abetter of the defendant, Victor, if the husband had been on trial, notwithstanding the existence of the marriage relation, and we know of no law that would prevent the husband in that case from testifying in his own behalf as to what occurred upon the occasion testified to by his wife. If he would be a competent witness in his own behalf in the

supposed case, it is difficult for us to see why he would be incompetent as a witness in behalf of his codefendant. Moreover, the cases supra deny the disqualification of the offered spouse when the facts sought to be proven were not obtained by him or her by reason of the confidential relation and as a result of the marital relation. When the facts about which the offered witness proposed to testify consist of conversations and conduct between the other spouse and others and which the witness obtained ''just as any one else might have done,'' then it is not such a communication as is included in the broad definition supra, but is one to which the Code disqualification does not apply. Cases so holding are the Wiley and Hostetter cases, supra.

The information obtained by the husband in this case, and which defendant offered to prove by him, was not obtained by him by virtue of the marriage relation, but in the same manner that any other bystander could have obtained it, and we are therefore constrained to hold that the court erred in refusing to permit him to testify.

Wherefore the judgment is reversed, with directions to grant the new trial and for proceedings consistent with this opinion. All other questions are reserved.